The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: October 1 2013

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No: 12-31364 |
| | ) | |
| Marc J. Reichgott | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 13-3021 |
| | ) | |
| Marc J. Reichgott | ) | JUDGE MARY ANN WHIPPLE |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Flagstar Bank, FSB, et al. | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## MEMORANDUM OF DECISION GRANTING MOTION OF THE DEFENDANT FLAGSTAR BANK TO DISMISS

This adversary proceeding is before the court after a hearing held on the Motion of the Defendant, Flagstar Bank, to Dismiss it as a party. [Doc. # 6]. Appearing at the Hearing were: Attorney Matthew Bryant for the Plaintiff; and Attorney Austin Barnes for the Defendant. At the conclusion of the hearing, the court took the matter under advisement.

The Defendant's Motion to Dismiss challenges the viability of the adversary proceeding

commenced by the Plaintiff, Marc Reichgott, entitled "Complaint for Coercive Collection Practices Involving Discharged Debt." [Doc. #1]. In support of its Motion to Dismiss, the Defendant filed a Memorandum in Support, with the Plaintiff responding thereto with a Memorandum in Opposition. [Doc. # 6 & #7]. Having now had the opportunity to consider the arguments raised by the parties, as well as the applicable law, the court finds that the Defendant's Motion to Dismiss should be Granted, but that the Dismissal of the Plaintiff's complaint should be temporarily stayed so as to afford the Plaintiff the opportunity to seek leave from the court to file an amended complaint.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) as a civil proceeding arising under, arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Because this matter raises an issue concerning the court's order of discharge, this is a core proceeding that the court may hear and determine. 28 U.S.C. §§ 157(b)(1) and 28 U.S.C. §§ 157(b)(2)(A), (I), (J) and (O).

## BACKGROUND

The sole Plaintiff in this matter, Marc J. Reichgott ("Plaintiff"), is a debtor before this court, having filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.[1] The Plaintiff filed his petition for bankruptcy relief on March 26, 2012. (Case No. 12-31364). Prior to filing for bankruptcy relief, the Plaintiff, together with a co-debtor, executed a note evidencing a loan from Midwest Mortgage Investment, Ltd. for the sum of $150,636.00. The Plaintiff's residence was used as security for the loan, with the Plaintiff and his co-debtor executing a mortgage in favor of Midwest Mortgage.

At the time he filed for bankruptcy relief, the mortgage and note executed by the Plaintiff in favor of Midwest Mortgage had been transferred to the Defendant, Flagstar Bank, FSB ("the Bank"). After he filed for bankruptcy relief, the Bank filed a Motion for Relief from Stay and Abandonment. No opposition was filed against this Motion, and an order was then entered granting the relief requested by the Bank. Subsequently, on July 18, 2012, an order of discharge was entered in the Plaintiff's bankruptcy case.

---

[1] The court takes judicial notice of the contents of its case docket in the underlying Chapter 7 case and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

Beginning in November of 2012, and continuing into the year 2013, the Plaintiff began to receive communications from Selene Finance LP ("Selene Finance"), who was also named as a Defendant in this proceeding. These communications, which were both written and oral, sought payment on the note executed in favor of Midwest Mortgage. In a correspondence sent to the Plaintiff on November 29, 2012, entitled "Notice of Assignment, Sale, or Transfer of Servicing Rights," the Plaintiff was informed as follows:

> You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold, or transferred from Flagstar Bank, FSB to Selene Finance, LP, effective 11/15/2012.

(Doc. # 2, Ex. E).

Based upon the collection efforts levied against him, the Plaintiff commenced this action against the Bank and Selene Finance. The complaint brought by the Plaintiff made two common claims against the Defendants: (1) a willful violation of the discharge injunction; and (2) a violation of the Ohio Consumer Sales Practices Act. The Plaintiff also brought a claim against the Defendant, Selene Finance LP, for a violation of the Fair Debt Collection Practices Act. The Plaintiff and Selene Finance later settled the matters raised by the Plaintiff's complaint, and together filed a stipulated notice of dismissal as to Selene Finance only. [Doc. # 20].

## DISCUSSION

The Plaintiff's Complaint against the Bank involves two counts. First, the Plaintiff alleges a willful violation of the discharge injunction of § 524 of the Bankruptcy Code, 11 U.S.C. § 524; second, the Plaintiff alleges that the Bank is in violation of the Ohio Consumer Sales Practices Act. The Banks' Motion to Dismiss challenges both counts.

A motion brought to dismiss an adversary proceeding is governed by Federal Rule of Civil Procedure 12(b), made applicable to this proceeding by Bankruptcy Rule 7012(b). In incrementally numbered paragraphs, Federal Rule of Civil Procedure 12(b) enumerates seven separate grounds upon which a motion to dismiss may be based.

On the Plaintiff's complaint for a violation of the discharge injunction, the Bank predicates its Motion to Dismiss on the Plaintiff's failure to state any act it committed which, if proven true, would sustain his cause of action. In taking this position, however, the Bank did not specify upon which of the seven

grounds set forth in Rule 12(b) its motion is based. Notwithstanding, given its position, it seems implicit that the Motion to Dismiss brought by the Bank against the Plaintiff's first claim is predicated on Rule 12(b)(6), providing that a complaint may be dismissed for the "failure to state a claim upon which relief can be granted[.]"

The Federal Rules of Civil Procedure have adopted the concept of notice pleading, replacing the common law standard of fact pleading. *See Thomson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004) ("The federal rules replaced fact pleading with notice pleading"). Under the notice theory of pleading, a plaintiff is not required to plead all of his facts or legal theories to maintain an action. Instead, notice pleading only requires that a plaintiff allege sufficient information to afford the defendant fair notice of what claim is being brought and the grounds upon which the claim rests. *Benuzzi v. Bd. of Educ. of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011).

Rule 8 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7008, governs notice pleading in the bankruptcy courts. Under this Rule, it is provided that a complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that satisfies this standard will defeat a Rule 12(b)(6) motion to dismiss.

For the first of his two claims against the Bank, the Plaintiff alleged a violation of the discharge injunction. Such an injunction arises in any bankruptcy case where, as occurred in this case, an order of discharge is entered by the court. The scope and effect of the discharge injunction is governed by § 524. Generally, under this provision, any creditor holding a prepetition claim against a debtor is enjoined from pursuing that claim against the debtor as a personal liability. 11 U.S.C. § 524(a).

The factual allegations and averments the Plaintiff recited in support of his claim for a violation of the discharge injunction mostly concerned the Defendant, Selene Finance, who has since been dismissed from this action. In this regard, the Plaintiff made just this one specific averment against the Bank concerning his claim for a violation of the discharge injunction:

> The actions of Defendants in this case, in seeking and collecting payments on discharged debts by falsely and deceptively threatening derogatory credit reporting and further action, are in violation of the discharge injunction orders entered in Plaintiff's bankruptcy case pursuant to 11 USC 524, and constitute contempt of bankruptcy court orders pursuant to 11

4

USC 105.

[Doc. # 1, at ¶ 23]. Against the Bank, the Plaintiff also recited just one factual allegation of substance concerning the Bank's actions after the Plaintiff's discharge had been entered, and the discharge injunction was in place. This factual allegation sets forth that the Bank violated the discharge injunction by its transfer/assignment of its claim to Selene Finance on a post-discharge basis. *Id*. at ¶ 15.

Authority exists to support the Plaintiff's premise that the transfer/assignment of a discharged claim, which then results in subsequent collection activity by the transferee/assignee, may constitute a violation of the discharge injunction of § 524(a) by the transferor/assignor. *See Gunter v. Kevin O'Brien & Associates Co. LPA (In re Gunter)*, 389 B.R. 67 (Bankr. S.D. Ohio 2008) (liability found for a violation of the discharge injunction where creditor turned over a discharged debt to a third party). *See also Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 844-45 (Bankr. W.D. La.1995) (creditor, with knowledge of bankruptcy discharge, liable for turning account over to collection agency); *In re McClure*, 430 B.R. 358, 365–66 (Bankr. N.D. Tex.2010) ( "[T]he law is clear that a creditor that employs another to collect a debt in violation of section 524(a)(2) or section 362(a) is itself guilty of a stay violation.").

A case from this district effectively illustrates this line of authority. In *In re Lafferty* 229 B.R. 707 (Bankr. N.D. Ohio 1998) (J. Shea-Stonum), discharges were entered in two separate Chapter 7 cases. After the cases were closed, the respective debtors filed motions to reopen their cases for the purpose of seeking contempt sanctions against both the assignee of a creditor's accounts receivable, who had filed state-court complaints seeking to collect on the discharged obligations, as well as the creditor who had assigned the accounts on a post-discharge basis. After holding an evidentiary hearing, the court found both the assignor and the assignee liable for a violation of the discharge injunction. *Id*. at 715. Moreover, liability was found against the assignor, notwithstanding that certain precautions were taken to prevent the assignment of discharged debts. The court in *In re Lafferty* determined that when an assignor, with notice of a debtor's bankruptcy, assigns an account on a post-discharge basis, having reason to believe that the assignee will seeks to collect on the account, the assignment of the account is a deliberate act to collect on a discharged debt. *Id*. at 714.

To the extent, therefore, that the Bank effectuated a post-discharge transfer of the Plaintiff's account to Selene Finance, liability on the part of the Bank may exist for a violation of the discharge injunction of § 524(a). By the same token, the post-discharge transfer/assignment of an account by a creditor does not

5

constitute a per se sanctionable violation of the discharge injunction. Instead, at a minimum, for a sanctionable violation of the discharge injunction to exist, a debtor is required to show that the creditor's conduct was contemptuous. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 523-24 (6th Cir. 2000). (violation of discharge injunction does not create a private right of action; remedy must be sought in contempt). Under the current standards for notice pleading, however, the complaint brought by the Plaintiff does not make a plausible claim for a contemptuous violation of the discharge injunction, and is therefore deficient.

Based upon two recent cases rendered by the United States Supreme Court, the notice-pleading policy implemented by the Federal Rules of Civil Procedure has been heightened. These decisions are *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In the first decision, *Twombly*, the Supreme Court, focusing on the "showing" requirement of F. R. Civ. P. Rule 8(a)(2), held that while "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The Court then added that the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. at 555 (citations omitted). Therefore, according to the Supreme Court, the notice-pleading standard of the Federal Rules requires that there must be pleaded "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Later, in *Iqbal*, the Court reinforced its holding in *Twombly*, and then suggested a two-step analytical process for determining the sufficiency of pleadings. In step one, a court is to determine which allegations are insufficient as being merely "labels and conclusions," "formulaic recitations," or "naked assertions." *Iqbal*, 550 U.S. at 678. The veracity of these types of allegations does not need to be accepted by the court. *Id*. at 679. In step two, having winnowed down the allegations that the court must accept as true, the court then determines whether those allegations "plausibly give rise to an entitlement to relief." *Id*. For this purpose, the Supreme Court in *Iqbal* held that determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

6

In this case, the Plaintiff made only one specific averment concerning the Bank's alleged violation of the discharge injunction. As previously set forth, this averment provided: the "actions of Defendants in this case, in seeking and collecting payments on discharged debts by falsely and deceptively threatening derogatory credit reporting and further action, are in violation of the discharge injunction orders entered in Plaintiff's bankruptcy case pursuant to 11 USC 524, and constitute contempt of bankruptcy court orders pursuant to 11 USC 105."

This allegation, however, provides no factual support. Moreover, by its use of the plural, "Defendants," this general allegation does not attempt to differentiate between the respective Defendants, suggesting that the same operative facts could establish liability for both of the Defendants, a highly unlikely fact given that the Bank assigned its claim to Selene Finance. On whole, therefore, the Plaintiff's averment, being conclusory in nature, cannot be construed as anything more than unsupported "labels and conclusions" and "naked assertions," which do not pass muster under the *Twombly* and *Iqbal* standard for pleading.

To be sure, the Plaintiff did mention, in his factual recitation, that the Bank, on a postpetition basis, transferred its claim to Selene Finance. As discussed, such an action may give rise to violation of the discharge injunction. This statement, however, leaves out important particulars necessary to state a plausible claim against the Bank. For example, did the action cause the Plaintiff harm and would such an action give rise to a contemptible sanction as is necessary to maintain an action for a violation of the discharge injunction. In the absence of such particulars, the Plaintiff's factual allegation concerning the Bank's post-discharge conduct is not sufficient to raise a right to relief above the speculative level.

Under these circumstances, the Bank's Motion to Dismiss has merit with regards to the first count of the Plaintiff's complaint concerning a violation of the discharge injunction. Notwithstanding, before dismissing this cause, the court finds it appropriate to afford the Plaintiff the opportunity to seek leave from the court to amend his complaint under F. R. Civ. P. Rule 15(a)(2), as made applicable to this proceeding by Bankruptcy Rule 7015. *See Island Green, LLC v. Querrard*, 429 Fed.Appx. 90 (3rd Cir. 2011) (affording opportunity to amend before dismissing complaint). However, this same opportunity, as now explained, will not apply to the second of the Plaintiff's counts against the Bank as this count is jurisdictionally defective.

In his second count against the Bank, the Plaintiff brings a claim for a violation of the Ohio

7

Consumer Sales Practices Act, O.R.C. 1345.01, *et seq*. In his complaint, as required by F.R.Civ. P. 8(a)(1), the Plaintiff made "a short and plan statement of the grounds for the court's jurisdiction." For his claim under the Ohio Consumer Sales Practices Act, the Plaintiff set forth that the court "has jurisdiction over the state law claims pursuant to [28] U.S.C. 1367." [Doc. # 1, ¶ 4].

Under 28 U.S.C. § 1367,[2] district courts are afforded with "supplemental jurisdiction" to adjudicate matters concerning non-federal claims if the non-federal claim is so related to claims over which the court has jurisdiction so as to comprise a single constitutional "case or controversy" within the meaning of Article III. This grant to the district courts of supplemental jurisdiction, however, does not extend to the bankruptcy courts. *See Edge Petroleum Operating Co., Inc. v. GPR Holdings, L.L.C. ( In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007); *In re Goldstein*, 201 B.R. 1 (Bankr. D. Me. 1996). The reason for this lack of supplemental jurisdiction is premised on the limited nature of both bankruptcy jurisdiction and the bankruptcy courts, as set forth in the following two jurisdictional provisions.

First, the basis for federal court jurisdiction over bankruptcy cases is derived from 28 U.S.C. § 1334. Under this provision, district courts are conferred with "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). As well, under this provision, the district courts are conferred with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

Second, for the types of bankruptcy matters set forth in § 1334, it is provided in 28 U.S.C. § 157(a) that each "district court may provide" that such matters "be referred to the bankruptcy judges for the district." Such a referral exists in this district, the Northern District of Ohio. (General Order 2012-7 of the United States District Court for the Northern District of Ohio).

As these provisions show, this court's authority to decide matters is derived entirely from 28 U.S.C. § 157(a) which, in turn, is based on the grant of jurisdiction conferred upon the district courts in 28 U.S.C. § 1334. As an initial matter, Plaintiff's Ohio Consumer Sales Practices Act claim is obviously not a case

---

[2]28 U.S.C. 1367(a) provides that: Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

8

under title 11, does not arise under title 11 or does not arise in Debtor's underlying case under title 11. That leaves the category of matters "related to" cases under title 11. The Sixth Circuit Court of Appeals follows the test for determining "related to" jurisdiction that was enunciated in *Paccor v. Higgins (In re Paccor)*, 743 F. 32d 984 (3d Cir. 1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Michigan Emp't Sec. Comm'n v. Wolverine Radio (In re Wolverine Radio)*, 930 F.2d 1132, 1142 (6th Cir. 1991). The Chapter 7 Trustee filed a no asset report in this case on May 21, 2012. Taking the averments of the complaint as true, the instant cause of action was not property of the estate at filing of the Chapter 7 case, *Vienneau v. Saxon Capital, Inc. (In re Vienneau)*, 410 B.R. 329, 334 (Bankr. D. Mass, 2009)("[C]laims arising from post-petition actions are not property of the estate."), which was reopened only for the filing of the instant adversary proceeding. Thus no trustee was appointed by the United States Trustee as being necessary to protect the interests of creditors or to insure efficient administration of the case. *See* Fed. R. Bankr. P. 5010. There will be no effect on the bankruptcy estate as a result of Plaintiff's Ohio Consumer Sales Practices Act claim, win or lose. And the fact that Plaintiff's claim for contempt of the discharge injunction and his state law claim share a common factual nexus is not sufficient to establish jurisdiction in this court. *See Marshall v. PNC Bank (In re Marshall)*, 491 B.R. 217, 228 (Bankr. S.D. Ohio 2012). The court finds that it does not have subject matter jurisdiction over that claim under 28 U.S.C. §§ 1334 and 157.

Nor does the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), to which Plaintiff points afford this court subject-matter jurisdiction over his Ohio Consumer Sales Practices Act claim. While "it appears to be well-established that district courts have supplemental jurisdiction over all claims that are so related to claims asserted in bankruptcy cases or adversary proceedings that they form part of the same case or controversy," *Rhiel v. Central Mortg. Co. (In re Kebe)*, 444 B.R. 871, 879 (Bankr. S.D. Ohio 2011), there is a split of authority over whether bankruptcy courts may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), *see id.* at 880 and cases cited therein. The Sixth Circuit has not addressed this issue. In this court's view, those courts such as in the *TXNB Internal Case* and *Goldstein* cases cited above that find the bankruptcy courts lack the power to rely upon supplemental jurisdiction under 28 U.S.C. § 1367 employ

9

the more persuasive reasoning. *See* Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory and Policy Analysis*, 62 Fordham L. Rev. 721 (1994); *see also* Patrick M. Birney & Michael R. Enright, *May a Bankruptcy Court Exercise Supplemental Jurisdiction Predicated on its Referred "Related to" Jurisdiction?*, 19 J. Bankr. L. & Prac. 1 Art. 1 (Jan. 2010). Most simply put, as a district court's supplemental jurisdiction is derived from 28 U.S.C. § 1367, and not the "Bankruptcy cases and proceedings" jurisdiction statute, 28 U.S.C. § 1334, this court, as a bankruptcy court, does not have any basis to hear and determine a claim based upon supplemental jurisdiction thereunder. Lacking jurisdiction to hear the Plaintiff's supplemental claim for a violation of the Ohio Consumer Sales Practices Act, this claim is subject to dismissal under F.R.Civ. P. Rule 12(b)(1) based upon a lack of subject-matter jurisdiction.

For these reasons, the court finds that the Bank's motion to dismiss has merit. Pursuant to F. R .Civ. P. Rule 12(b)(6), the Plaintiff's contempt claim for a violation of the discharge injunction is granted, with the proviso that the Plaintiff will be afforded the opportunity to seek leave from the court to amend his complaint on this claim, only. The Plaintiff's claim for a violation of the Ohio Consumer Sales Practices Act, however, is hereby dismissed forthwith under F.R.Civ. P. Rule 12(b)(1) based upon a lack of subject-matter jurisdiction.

The court will enter a separate order in accordance with this Memorandum of Decision.

###